UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK JAMES,

            Plaintiff,

  -vs-

THOMAS POOLE, Superintendent, Five
Points Correctional Facility;
GIANCOLA, Facility Sgt.; W.
FENNESSY, Food Service Admin.; B.
SHEFTIC, Corr. Officer; and THOMAS
EAGAN, C.O.R.C. Grievance Dir.,

            Defendants.
_____

**DECISION and ORDER
No. 06-CV-6007(MAT)**

## I. Introduction

Plaintiff Mark James ("James" or "Plaintiff"), proceeding pro se, instituted this action pursuant to 42 U.S.C. § 1983 against the above-named defendants with regard to alleged constitutional violations that occurred while he was housed at Five Points Correctional Facility ("Five Points"). Defendants conducted Plaintiff's deposition, and the parties have engaged in limited written discovery.

On May 19, 2010, Defendants moved to dismiss the Complaint (Dkt #47) pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") Rule 12(b)(6). James, in responding to the motion (Dkt #52), requested that the Court convert the motion to one for summary judgment in his favor pursuant to F.R.C.P. 56(c). On November 15, 2011, James filed a motion to set a trial date (Dkt #57).

This matter was transferred to the undersigned on December 17, 2012 (Dkt #58). For the reasons that follow, Complaint is dismissed.

## II. Factual Background

Plaintiff describes himself as a "Black-African American follower of the 'Jewish Faith.'" Complaint ("Compl.") at 4 (Dkt #5-2_. He states that upon entering Five Points Correctional Facility on June 9, 2005, he followed the proper procedure to be placed upon the Kosherm, or "Cold Alternative", meal plan. About a month later, he noticed that "the meals were being incorrectly prepared and spoiled food was placed in the trays." Id. at 3. He complained to Deputy Superintendent Brown (not a named defendant), and received a response from W. Fennessy, Food Service Administrator ("F.S.A. Fennessy"), dated August 10, 2005, informing Plaintiff that he had received a copy of Plaintiff's grievance. Fennessy stated as follows:

> The Cold Alternative meals are prepared daily by inmate workers. We use a variety of meats in the Cold Alternative meals. Your concerns of missing or rotten/spoiled items should be addressed with your gallery officer and if necessary with the cook supervising the meal. Any future problems with your meals can be directed to the Food Service department to quickly resolve these problems.

Comp., Ex. (AA1) (Dkt #5-2).

Plaintiff states that after registering his complaints about his meals, he was "'stalked' in the mess hall (Dining room B), by Officer B. Sheftic on August 22, 2005." Compl. at 4 (Dkt #5-2).

Plaintiff asserts that two days after he was "stalked", Corrections Officer ("C.O.") Sheftic searched his cell, threatened him with physical harm, and confiscated his legal paper work and personal items. Id. According to Plaintiff, C.O. Sheftic told him that he "should stop writing grievances." Id. Plaintiff then filed a grievance on August 25, 2005, against C.O. Sheftic. Facility Sergeant ("F.S.") Giancola was assigned to investigate the grievance. Plaintiff accuses F.S. Giancola of failing to "follow up on any of the statements [he] made . . . or the evidence of harassment and discrimination . . . presented to him." Id.

Eventually, Plaintiff appealed to the Central Office Review Committee ("CORC"), but CORC Director Thomas Eagan "failed to initiate a proper investigation . . . and affirmed the Superintendent's denial of [P]laintiff's grievances." Id.

### III. Motions to Dismiss and Motions for Summary Judgment

#### A. F.R.C.P. 12(b)(6) Motions to Dismiss

Defendant initially moves to dismiss the Amended Complaint pursuant to F.R.C.P. 12(b)(6). On such a motion, the reviewing court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011) (citation omitted). The same standards apply to a Rule 12(c) motion for judgment on the pleadings Id. In deciding motions pursuant to F.R.C.P. 12, the Court may consider documents

referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied upon in his suit. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

**B.   Conversion to F.R.C.P 56 Motion for Summary Judgment**

Plaintiff requests that this Court convert the motion to one for summary judgment pursuant to F.R.C.P. 56. In general, a district court should give parties notice of its intent to convert a motion to dismiss into a motion for summary judgment. Green v. Doukas, No. 99 Civ. 7733, 2000 WL 236471, at *2, 205 F.3d 1322 (2d Cir. 2000). However, under certain circumstances, a court may convert a motion without giving explicit notice. Id. "The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." Id. (quoting In re G. & A. Books, Inc., 770 F.2d 288, 294-95 (2d Cir. 1985)). Furthermore, "[i]f both parties submit extrinsic material-or even if the moving party alone submits extrinsic material-the opposing party may be deemed to have adequate notice that the motion might be converted." Green, 2000 WL 236471, at *2, 205 F.3d 1322.

In response to the motion to dismiss, Plaintiff made an explicit request to this Court to convert the motion to one for

summary judgment in the event that the Court finds dismissal under 12(b)(6) inappropriate, and Defendants did not object to this request. Plaintiff also submitted a "Statement of Facts" in opposition to Defendants' motion. Because Defendants had adequate notice of Plaintiff's alternative motion, the motion to dismiss will be converted to one for summary judgment pursuant to F.R.C.P. 56. See United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp.2d. 443, 449 n. 2 (S.D.N.Y. 2001) ("Because the Moving Defendants specifically moved in the alternative for partial summary judgment pursuant to Rule 56, Phipps had adequate notice of the motion and the possibility that facts outside the pleadings would be considered on the issue of whether the Court had subject matter jurisdiction.").

A motion for summary judgment pursuant to F.R.C.P. 56(c) may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986). Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. <u>Celotex</u>, 477 U.S. at 322–23; <u>see</u> <u>also</u> <u>Silver v. City Univ. of N.Y.</u>, 947 F.2d 1021, 1022 (2d Cir. 1991). The "mere existence of a scintilla of evidence" supporting the non-moving party's cause is insufficient. <u>Anderson</u>, 477 U.S. at 252. The non-moving party may not rely on evidence that is merely colorable, conclusory, or speculative but must come forward with "concrete evidence from which a reasonable jury could return a verdict in [his] favor." <u>Id.</u> at 256.

**IV. General Legal Principles**

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law, and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993). In addition, the § 1983 plaintiff must adequately demonstrate "personal involvement of defendants in alleged Constitutional deprivations." <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995). "Personal involvement of a supervisory official may be established 'by evidence that: (1) the [official] participated directly in the alleged constitutional violation, (2) the [official], after being informed of the

violation through a report or appeal, failed to remedy the wrong, (3) the [official] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [official] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [official] exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.'" Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 254 (2d Cir. 2001) (quoting Colon, 58 F.3d at 873) (alterations in original)).

**V. Discussion**

**A. First Cause of Action: Conspiracy**

The first cause of action asserted by James is "'Conspiracy under Sect. 1983." Dkt #5-2 at 8. As James has not specified which individual defendants participated in the alleged conspiracy, the Court has assumed that all named defendants were involved. The Court also presumes that James intended to assert his cause of action under 42 U.S.C. §§ 1985(3) and 1986. Section 1985(3) provides in relevant part as follows:

> If two or more persons in any State or Territory conspire
> . . . for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and
> immunities under the laws; . . . if one or more persons
> . . . do, or cause to be done, any act in furtherance of
> the object of such conspiracy, whereby another is ...
> deprived of having and exercising any right or privilege
> of a citizen of the United States, the party so injured

> or deprived may have an action for the recovery of damages. . . .

42 U.S.C. § 1985(3). "The conspiracy must be motivated by racial or related class-based discriminatory animus." Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (citing, inter alia, United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 835-37 (1983)). Section 1986 of title 42 U.S.C. imposes liability on an individual who has knowledge of discrimination prohibited under § 1985. Graham, 89 F.3d at 82. "Hence, a § 1986 claim is contingent on a valid § 1985 claim." Id. (citation omitted).

As discussed below, Plaintiff has not established any violations of his constitutional rights by Defendants. A fortiori, his claim that Defendants conspired to violate his constitutional rights fails as a matter of law.

**B. Second Cause of Action: "42 U.S.C. Sect. 1985"**

Although Plaintiff cites the conspiracy statute, 42 U.S.C. § 1985, in the heading for the second cause of action, the allegations do not state a claim for a violation of that statute. Plaintiff simply asserts that all Defendants "harass[ed] and discriminate[d] against based on his (Race, Color and Religion) at the time of plaintiff's complaints and grievances against the defendants." Dkt #5-2 at 8. This cause of action is essentially a aggregation or summary of various allegations in Plaintiff's Complaint, and does not state an individual legal theory. However, the Court has construed the allegations in the Complaint and

Plaintiff's deposition testimony broadly, so as to raise the strongest claims possible. Nevertheless, the Court can discern to constitutional violations redressable under § 1983, as discussed below.

**1. "Stalking" by C.O. Sheftic**

When asked to elaborate on his claim that C.O. Sheftic "stalked" him, Plaintiff testified that, after he complained about receiving spoiled food in his meal trays, C.O. Sheftic stood over him for about fifteen and stared at him while he ate his meal. See Deposition of Mark James ("Pl's Dep.") at 84 (Dkt #36-4). Plaintiff does not allege that C.O. Sheftic made physical contact with him or threatened to harm him in any way. The "staring" incident is the sole allegation in support of Plaintiff's claim of "stalking" by C.O. Sheftic. As such, James fails to allege a cognizable injury. See, e.g., Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996)("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); see also Petty v. Goord, No. 00 Civ. 803(JSR), 2008 WL 2604809, at *5 (S.D.N.Y. June 25, 2008) (verbal harassment related to inmate's HIV-positive status did not state a claim under the Eighth Amendment); Davidson v. Tesla, No. 06 Civ. 861, 2008 WL 410584, at *4 (D. Conn. Feb. 13, 2008) (no constitutional violation based on officer acting in an "angry, hostile, aggressive and belligerent manner").

### 2. Inadequate Investigation

Plaintiff asserts that F.S. Giancola conducted an inadequate investigation into his grievances and failed to consider what Plaintiff characterizes as considerable evidence of harassment and discrimination. See Dkt #5-2, ¶ 2. He also asserts that CORC Director Eagan and Superintendent Poole made only a "cursory" investigation of his grievances and that their decisions denying him relief were "arbitrary and capricious." Id., ¶ 5.

It is well-established that a prison inmate has no constitutional right of access to an internal grievance process, or to an investigation of his grievance that he deems adequate. See, e.g., Rhodes v. Hoy, No. 05-CV-836, 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); Davis v. Buffardi, No. 01 CV0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005)("[P]articipation in an inmate grievance process is not a constitutionally protected right.") (citations omitted); Cancel v. Goord, No. 00. CIV.2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under section 1983). This claim must be dismissed as a matter of law as Plaintiff has failed to demonstrate an underlying constitutional obligation on the part of Defendants to to

investigate and determine-in a manner he deems correct-his grievances filed pursuant to DOCCS' internal grievance procedure. Accord, e.g., Toole v. Connell, No. 9:04CV0724LEK/DEP, 2008 WL 4186334, at *8 (N.D.N.Y. Sept. 10, 2008).

**C. Third Cause of Action: "The First Amend. Of The U.S. Constitution"**

Plaintiff asserts that all of the Defendants "by theirs [sic] actions or in-actions have violated [his] right under the 'freedom of religion' clause" of the First Amendment. Dkt #5-2 at 8. Plaintiff does not allege any facts under this heading. Defendants have assumed that his First Amendment claim relates to his allegations of being served spoiled food. The Court finds this a reasonable interpretation.

Construing the Complaint and Plaintiff's other submissions leniently, as is required given his pro se status, it appears that Plaintiff is claiming that he was served spoiled or rotten food on numerous occasions and was denied nutritionally adequate Kosher meals on "approximately 20" occasions. See, e.g., Affidavit of Shabazz Vasquez ("Vasquez Aff."), ¶ 2 (Dkt #36-5). According to Vasquez, he was present when FSA Fennessy and "a[n] Officer" told Plaintiff that he was removed from the Kosher meal plan because he was "a N-----" and "not a true 'Jew'". Vasquez Aff., ¶ 2 (Dkt #36-5).

With regard to his claims of being served spoiled food items that were incompatible with the requirements of the Cold

-11-

Alternative Diet, James has failed to set forth a cognizable constitutional violation. In his deposition testimony, he identified only three occasions on which his food tray contained spoiled or unpalatable items. Each time, he addressed the issue with the facility cook, and was either given a replacement item or an entirely new food tray. See Pl's Dep. at 123-24 (Dkt #36-4) Cf. Ward v. Goord, No. 9:06-CV-1429, 2009 WL 102928, at *6 (N.D.N.Y. Jan. 13, 2009) ("In this case, Ward has failed to establish an Eighth Amendment claim based upon denial of kosher meals during his transport. While Ward repeatedly claims that he was offered non-kosher, rotten, and stale food, he has neither proven the existence of imminent danger to his health and well-being nor an actual injury. Ward also does not allege that the unnamed corrections officer that provided him with his meals were aware that the food that they were serving was allegedly inedible. Additionally, when Ward brought the situation to an officer's attention, the officer contacted the kitchen and attempted to remedy the problem.") (footnote and internal citation to record omitted).

With regard to James' claim that he was removed from the Cold Alternative Diet ("CAD") meal plan because of his race and because Defendants did not believe he was an authentic practitioner of Judaism, he has not raised a triable issue of fact. As discussed above, at his deposition, Plaintiff testified only that he received

three meal trays that were unacceptable. See McEachin v. McGuinnis, 357 F.3d 197, 203 n. 6 (2d Cir. 2004) (holding that "[t]here may be inconveniences so trivial that they are most properly ignored ... [thus] the time-honored maxim de minimis non curat lex applies") (footnote omitted). In any event, Plaintiff was provided new items or a new tray at his request on each occasion.

Plaintiff likewise has not substantiated his claim that he was removed from the CAD meal plan because of his race and because prison officials questioned the sincerity of his beliefs. The documents submitted by Plaintiff actually contradict this claim and relate to a time-period outside the three-year statute of limitations. For instance, he has submitted interdepartmental memoranda indicating that he was removed from the CAD meal plan after an audit in December 2008 revealed that he had missed an impermissible number of meals, in violation of facility regulations. See Dkt #36-5, pp. 18 of 37. However, in February 2009, he was able to restart the CAD meal program. See Dkt #36-5, pp. 20 of 37.

**D. Fourth Cause of Action: "Due Process"**

Plaintiff's Fourth cause of action is titled "Due Process" in violation of Prision Directive 4910. See Dkt #5-2 at 9. Plaintiff alleges that C.O. Sheftic conducted a cell search in violation of Prison Directive 4910, thereby violating his right to due process under the Fourteenth Amendment. Plaintiff asserts that his legal

papers, his Torah, and his "tonnoc [sic]" were removed from his cell during the search. It appears that these items later were returned. See Pl's Dep. at 96-97 (Dkt #36-4)

Plaintiff's claims regarding Directive # 4910 fail to show the existence of a property interest to which a due process right is attached. See Smith v. O'Connor, 901 F. Supp. 644, 648 (S.D.N.Y. 1995) ("[D]irective [4910] simply provides a blueprint for correctional officers to follow when conducting a cell search. Its aim is to ensure that officers take care when moving an inmate's property during the search. Even the most liberal interpretation of Directive # 4910 cannot support the conclusion that an inmate has an entitlement to a property interest in a clean cell during or after a search.") (citing Terrell v. Coughlin, No. 91 Civ. 2987(LJF), 1991 WL 274475, at *2 (S.D.N.Y. Dec. 10, 1991) (finding that Directive # 4910 does not grant inmates substantive rights). Even assuming C.O. Sheftic violated the terms of Directive #4910, Plaintiff is not entitled to constitutional due process protections because no property right is created by that directive. Accord Smith, 901 F. Supp. at 648.

**E.  Supervisors' Liability**

Plaintiff attempts to establish personal involvement by Superintendent Poole and CORC Director Eagan by pointing to their roles in reviewing Plaintiff's grievances. Without more, this is

insufficient to create personal involvement in Plaintiff's alleged constitutional violations.

Invariably, a prisoner's grievance is passed upon by the Superintendent, and by the director of the CORC if the prisoner pursues a further appeal. See N.Y. Comp. Code R. & Regs., tit. 7, § 701.7(c) ("Th[e] [Inmate Grievance] [P]rogram enables any inmate who is personally affected by an issue for which there is no avenue for redress or correction to seek resolution of a complaint through a facility committee of elected peers and appointed staff members: the inmate grievance resolution committee (IGRC). If not satisfied, an inmate may appeal to the facility superintendent; if still not satisfied, an inmate may appeal to a committee of central office staff acting on behalf of the commissioner: the central office review committee (CORC)."). This is insufficient, however, to establish the requisite personal involvement for purposes of § 1983. See Joyner v. Greiner, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.") (internal quotation marks and citation omitted). Here, Plaintiff's Complaint merely states that Superintendent Poole and CORC Director Eagen affirmed the denial of his grievances. Likewise, in Plaintiff's

deposition, he did not testify regarding any other involvement by these supervisors. See Pl's Dep. at 98-99 (Dkt #36-4). "It is well established that 'absent some personal involvement by [the Superintendent of a DOCCS facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under Section 1983.'" Joyner, 195 F. Supp.2d at 506 (quoting Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) (citations omitted)).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt #47) is granted, and the Complaint is dismissed in its entirety. Plaintiff's motion to set a trial date (Dkt #57) is denied as moot.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: January 9, 2013
Rochester, New York